IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANTONIO LEVON TURRENTINE,       )
                                )
             Plaintiff,         )
                                )
     v.                         )     1:17CV100
                                )
LOPEZ, et al.,                  )
                                )
             Defendants.        )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court upon Plaintiff Antonio Levon Turrentine's Motion for Partial Judgment by Default. (Docket Entry 32.) Also before the Court is Defendants "Durham Police Department Chief of Police 'Lopez'," ("Lopez"), Inv. J. Valle-Avelares ("Valle-Avelares") and Inv. Honeycutt's ("Honeycutt") (hereinafter collectively "Moving Defendants") Motion to Set Aside Entry of Default. (Docket Entry 36.) These matters are ripe for disposition. For the following reasons, it is recommended that the Court grant Moving Defendants' motion to set aside entry of default and deny Plaintiff's motion for partial judgment by default.

**I. BACKGROUND**

Plaintiff, a pro se prisoner, filed this action against several Defendants alleging use of excessive force stemming from an incident in June 2015. (*See generally* Complaint, Docket Entry 2; Am. Complaint, Docket Entry 6.) Since the issuance of the summonses, the U.S. Marshal filed Returns indicating that Moving Defendants had been served. (Docket Entries 18, 22, 23.) On May 28, 2019, Plaintiff moved for entry of default against Moving Defendants.

(Docket Entries 27, 28, 29.) Thereafter, the Court, having concluded that said Defendants were served by the U.S. Marshal's Office and neither had filed an answer nor responsive pleading, entered default against Moving Defendants pursuant to Federal Rule of Civil Procedure 55(a). (Docket Entry 30.) Plaintiff then moved for default judgment against Moving Defendants. (Docket Entry 32.) In response, Moving Defendants filed a motion to set aside entry of default. (Docket Entry 36.)

In support of Moving Defendants' motion, each movant submitted an affidavit. (Docket Entry 36 at 8-18.) Lopez indicates that he was employed with the City of Durham as Chief of Police until December 31, 2015 when he retired. (Lopez Aff. ¶ 2.) Lopez did not designate any employee of the City of Durham to accept service of process on his behalf after December 21, 2015, nor did he personally accept service of process with regard to the summons in this matter. (*Id.* ¶¶ 3-4.)

Valle-Avelares, an investigator with the City of Durham, indicated that he received the summons in this case on or about January 2, 2019. (Valle-Avelares Aff. ¶ 5.) It was his understanding that the City Attorney's Office would handle the matter. (*Id.*) After inquiring about this case in July 2019, he was informed that no responsive pleading had been filed on his behalf. (*Id.* ¶ 6.) As to the substance of Plaintiff's allegations in the Complaint, Valle-Avelares states that he was involved in the June 2015 apprehension of Plaintiff and denies use of excessive force in his efforts to prevent Plaintiff from harming other officers. (*Id.* ¶¶ 3-4.) Valle-Avelares also attached the Supplemental Report he wrote regarding the incident. (Docket Entry 36 at 12-14.)

Honeycutt, a police officer with the City of Durham, indicates that he was involved in the search of Plaintiff following his June 2015 arrest. (Honeycutt Aff. ¶ 3.) He also submitted a Supplemental Report and denies excessive force in his search for contraband on Plaintiff's person. (*Id.* ¶ 4; *see also* Docket Entry 36 at 17-18.) Honeycutt indicates that the summons in this case was found on his desk on or about February 17, 2019. (Honeycutt Aff. ¶ 5.) He notified the police attorney of the summons and assumed that the matter would be handled by the City Attorney's Office. (*Id.*) He was not aware that no response had been filed on his behalf. (*Id.* ¶ 6.)

## II. DISCUSSION

### A. <u>Moving Defendants' Motion to Set Aside Entry of Default</u>

Pursuant to the Federal Rules of Civil Procedure, "[t]he Court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). The Fourth Circuit has held that certain factors must be considered to determine if there is "good cause" to set aside an entry of default: (1) whether the moving party has a meritorious defense, (2) whether it acts with reasonable promptness, (3) the personal responsibility of the defaulting party, (4) the prejudice to the party, (5) whether there is a history of dilatory action, and (6) the availability of sanctions less drastic. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson v. Hodge,* 411 F.2d 123, 130 (4th Cir. 1969) (citation omitted). Resolution of motions made under Rules 55(c) "is a matter which lies largely within the discretion of the trial judge[.]" *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967).

Considering the factors in *Payne*, the Court concludes that Moving Defendants' motion should be granted. The Court first considers whether Moving Defendants have raised a meritorious defense. *Payne*, 439 F.3d at 205. Moving Defendants contend that because Plaintiff failed to properly serve them, the Court does not have personal jurisdiction over them. "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler v. Dodwell,* 152 F.3d 304, 306 (4th Cir. 1998); *Reynolds Innovations,* 851 F. Supp. 2d at 962; *U.S. ex rel. Metromont Corp. v. S.J. Constr., Inc.*, No. 1:09CV745, 2010 WL 2793919, at *5 (M.D.N.C. July 15, 2010) ("If service of process is not valid, a district court lacks jurisdiction over a defendant."). The Federal Rules of Civil Procedure require that any summons be "directed to the defendant," Fed. R. Civ. P. 4(a)(1)(B), and service may be effected under state law (Rule 4(e)(1)) or by delivering the summons "to the person individually," leaving a copy at the person's home, or delivering a copy to "an authorized agent." Fed. R. Civ. P. 4(e)(2). Service of process on an individual under state law in North Carolina is governed by North Carolina Rule of Civil Procedure 4. N.C. Gen. STAT. § 1A-1, Rule 4(j)(l). N.C. R. Civ. P. 4 provides that service can be accomplished by delivering a copy of the summons and complaint: to the person; to the person's dwelling or usual place of abode; to an authorized agent; or by mail, addressed to the party to be served. *Id.*

Here, there are questions regarding the adequacy of service of process for Moving Defendants. As previously stated, Lopez has not been employed by the City since the end of 2015, and no officer or employee of the City of Durham is authorized to accept service for him. The summons and Complaint directed to Valle-Avelares was delivered to and signed for

4

by him on January 2, 2019, but he argues that this was well outside the 90-day time limit for service of summons under Fed R. Civ. P. 4(m). The summons directed to Honeycutt was signed for by "C. C. Green" on January 11, 2019 and was neither served within the 90-day period required by Rule 4(m) nor delivered directly to Honeycutt.

To the extent that Plaintiff asserts claims against Moving Defendants in their official capacities, he is asserting claims against the City of Durham. *See White v. City of Greensboro*, No. 1:18-CV-00969, 2019 WL 4784632, at *6 (M.D.N.C. Sept. 30, 2019) ("[S]uits against governmental officers in their official capacity are treated as suits against the government."). Pursuant to Rule 4(j)(2) of the Federal Rules of Civil Procedure, to properly serve "[a] state, a municipal corporation, or any other state-created governmental organization," a plaintiff may "either serve a copy of the summons and the complaint on its chief executive officer or in the manner prescribed by state law for serving process on such a defendant." Fed. R. Civ. P. 4(j)(2)(A)-(B); *Evans v. Griffin*, No. 14CV1091, 2015 WL 5577486, at *2 (M.D.N.C. Sept. 22, 2015) (requiring a pro se plaintiff to follow Rule 4(j)(2) and properly serve the City of Greensboro after he erroneously served the city attorney). In addition, North Carolina allows a plaintiff to serve the city's mayor, city manager, or clerk. N.C. R. Civ. P. 4(j)(5). Here, delivery of a summons and complaint to the individual Moving Defendants by certified mail does not comply with the applicable rules for service of process on the City of Durham.

Even if service of process was properly effectuated upon Moving Defendants, they have presented a potentially meritorious defense with regard to the alleged excessive force used against Plaintiff. A Fourth Amendment claim that a police officer employed excessive force must be analyzed under an "objective reasonableness" standard. *Henry v. Purnell*, 652 F.3d

5

524, 531 (4th Cir. 2011) (en banc). "The officer's actions do not amount to excessive force if they are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Smith v. Ray*, 781 F.3d 95, 101 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). In considering the reasonableness of an officer's actions, the court examines the facts at the moment that the challenged force was employed. *Smith*, 781 F.3d at 101. Such an examination involves a balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citing *Graham*, 490 U.S. at 396). As stated by the Fourth Circuit,

> To properly consider the reasonableness of the force employed we must view it in full context, with an eye toward the proportionality of the force in light of all the circumstances. Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness. We must also give careful attention to the facts and circumstances of each particular case, including three factors in particular: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Ultimately, the question to be decided is whether the totality of the circumstances justifie[s] a particular sort of seizure.

*Smith*, 781 F.3d at 101 (internal quotations and citations omitted) (alteration in original). Because "'police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary,'" courts must evaluate facts from the perspective of a reasonable officer on the scene without the use of hindsight. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (quoting *Graham*, 490 U.S. at 396-97); *see also Waterman v. Batton*, 393 F.3d 471, 476-77 (4th Cir. 2005) (quoting *Graham*, 490 U.S. at 397).

As to Valle-Avelares and Honeycutt, they each deny Plaintiff's allegations of excessive force and have tendered the Supplemental Reports they prepared following Plaintiff's arrest as evidence that they acted reasonable under the circumstances. (*See* Docket Entry 36 at 12-14, 17-18.) Valle-Avelares' report details the June 4, 2015 incident whereby officers conducted surveillance of Plaintiff's perceived drug activity, conducted a traffic stop of Plaintiff, and subsequently engaged in efforts to stop Plaintiff after he struck an officer with his vehicle. (*Id.* at 12-18.) Honeycutt's report details the search of Plaintiff after the arrest, his continued resistance of officers, and the retrieval of small plastic bags (containing what is believed to be heroin) on the floor near the area where Plaintiff was lying. (*Id.* at 17-18.) Based upon the reports, Valle-Avelares and Honeycutt have presented a potentially meritorious defense to Plaintiff's claims. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party.").

As to Lopez, the only claim alleged against him in the Complaint appears to be a claim of failure to properly train and supervise the officers involved in the June 2015 incident. (Compl. ¶ 125.) "Although not expected to prevent all illegal acts by subordinates, if a supervising officer is 'deliberately indifferent' to his supervisory responsibility, he then bears some culpability for illegal conduct by his subordinates, and he may be held vicariously liable for their illegal acts." *Wiggins v. Quesenberry*, 222 F. Supp. 3d 490, 502 (E.D. Va. 2016) (citation omitted). To prove supervisory liability, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge

> that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Gandy v. Robey*, 520 F. App'x 134, 142-43 (4th Cir. 2013) (citation omitted). Here, Plaintiff fails to allege supporting facts indicating that Lopez's subordinates engaged in widespread conduct that posed an unreasonable risk to citizens like Plaintiff, nor that Lopez was aware of such conduct and was deliberately indifferent towards it. *Wiggins*, 222 F. Supp. 3d at 502. Thus, Lopez has at least presented a potentially meritorious defense at this juncture.

As to the second and third factors, both weigh in favor of Moving Defendants. Moving Defendants acted with reasonable promptness in filing the pending motion shortly after receiving notice of the entry of default. Additionally, the declarations demonstrate that Defendants' personal responsibilities for their failure to respond in this matter were minimal. Lopez was not aware that he had been designated as a defendant in this action, and Valle-Avelares and Honeycutt promptly notified the Police Attorney of receipt of the summonses.

The remaining factors also weigh in favor of Moving Defendants. Considering the fourth factor, Plaintiff would not be prejudiced by setting aside entry of default in this action. *Payne*, 439 F.3d at 205. Plaintiff has not cited any particular prejudicial effect, nor does the Court find that this matter would be adversely impacted by setting aside default. No discovery has been taken in this matter. With respect to the fifth and sixth factors, there is no history of dilatory conduct on the part of Moving Defendants, and sanctions are not warranted given

the circumstances of Moving Defendants' tardiness, particularly noting the service of process deficiencies. Thus, for good cause shown, and because the relevant factors weigh in favor of setting aside entry of default, Moving Defendants' motions should be granted.

### B. <u>Plaintiff's Motion for Partial Judgment by Default</u>

Plaintiff has filed a motion seeking partial default judgment against Moving Defendants, and relief as set forth in the Amended Complaint. (Docket Entry 32.) Because the Court recommends that entry of default against Moving Defendants should be set aside in this matter, Plaintiff's motion should be denied.

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY RECOMMENDED** that the Court **GRANT** Defendants' Motion to Set Aside Entry of Default (Docket Entry 36) and that the Court's Partial Entry of Default (Docket Entry 30) be set aside.

**IT IS FURTHER RECOMMENDED** that the Court **DENY** Plaintiff's Motion for Partial Judgment by Default (Docket Entry 32).

_____
Joe L. Webster
United States Magistrate Judge

December 31, 2019
Durham, North Carolina